KEVIN SROGA, Plaintiff-Appellee, v. THE PERSONNEL BOARD OF THE CITY OF CHICAGO *et al.*, Defendants-Appellants.

First District (4th Division)   No. 1—03—1879

Opinion filed July 29, 2005.

Mara S. Georges, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Meera Werth, Assistant Corporation Counsel), for appellants.

Kevin Sroga, of Chicago, appellee *pro se*.

JUSTICE QUINN delivered the opinion of the court:

The City of Chicago appeals from the judgment of the circuit court reversing the decision of the City's Personnel Board that removed Kevin Sroga's name from the list of those eligible for the position of a

probationary police officer due to his past criminal history. For the following reasons, we reverse the order of the circuit court and affirm the decision of the Personnel Board removing Sroga's name from the eligibility list.

## BACKGROUND

In 1999, Sroga applied to be a Chicago police officer and, as part of his application, Sroga was required to report any past criminal convictions or guilty pleas made in any court of law. Sroga indicated that he had been arrested twice, successfully completed one year of court supervision, and was in the process of having his criminal record expunged. His arrest record was ordered expunged on September 14, 1999.

Prior to the issuance of the expungement order, Chicago police officer Renee Rebich was assigned to conduct a background investigation of Sroga. Through her investigation, Officer Rebich discovered that Sroga had been arrested three times, as opposed to the two times that he had listed in his application, and that he had pleaded guilty in 1995 to criminal damage to property, the offense for which he received court supervision.

On October 2, 1999, Officer Rebich interviewed Sroga. According to Officer Rebich's report, Sroga explained the details of his conduct that led to his 1995 conviction for criminal damage to property:

"The candidate stated he was arrested in December 1994 for Theft from Person. He stated Ryan (brother) and Jeff (cousin) woke him up and asked him to tow a snowmobile on a trailer and put it in his garage. He stated the police came to his house and he was arrested for having stolen a snowmobile. He then stated he pled guilty and received 12 months' supervision and had to pay court costs.

Case Report # Y—580599 states that the candidate and his brother went to 6000 West Nelson, used bolt cutters to cut the chain securing the snowmobile and trailer and took these items to their garage. The candidate stated they did this because their parents would not give them money for a new snowmobile."

When asked about his undisclosed third arrest, Sroga also explained the facts surrounding that arrest. Officer Rebich characterized Sroga as "forthright and forthcoming" during the interview and noted that she did not feel that he was "trying to wilfully mislead or deceive her" in any way. However, on October 17, 2000, Sroga was sent a letter stating that he had been removed from the eligibility list due to his past criminal conduct and his failure to cooperate with the application process.

On February 21, 2002, a hearing was held, per Sroga's request,

before the Personnel Board's hearing officer, Dennis Fleming, in which both Sroga and Officer Rebich testified. During the hearing, the City raised four reasons why Sroga's name was properly removed from the eligibility list: (1) Sroga had committed the offense of criminal trespass to vehicle in December 1991; (2) Sroga had committed the offense of theft in June 1992; (3) Sroga had committed the offense of theft on or about December 10, 1994; and (4) Sroga had failed to cooperate with the application process.

On March 27, 2002, Fleming issued a written ruling finding that the City had proven only that Sroga had committed the offense of theft on or about December 10, 1994.[1] Fleming further found that this theft conviction violated the police department's criminal conduct background standard[2] and recommended that the City uphold the removal of Sroga's name from the eligibility list.

The Personnel Board upheld Fleming's recommendation and removed Sroga's name from the eligibility list "based on the December 10, 1994, arrest and plea of guilty with a stipulation to the facts on a reduced charge of theft." After the Personnel Board denied his motion to reconsider, Sroga filed a petition for writ of *certiorari* in the circuit court.

On June 2, 2003, the circuit court reversed the decision of the Personnel Board. In a written order, the circuit court found that the Personnel Board had properly considered the underlying facts of Sroga's conviction as amounting to theft, even though the offense for which he pleaded guilty was criminal damage to property. The court

[1] A review of the record indicates that after his arrest in December 1994, Sroga was charged with felony theft (now see 720 ILCS 5/16—1 (West 2002)), in connection with his role in the theft of the snowmobile. However, the State later amended that charge to criminal damage to property, a Class A misdemeanor (now see 720 ILCS 5/21—1 (West 2002)). On December 18, 1995, Sroga pleaded guilty to the amended charge and received one year of court supervision.

[2] According to that standard, any offense directed against property, including any theft or related offense, computer crime, deception, robbery, burglary, arson, and damage or trespass to property "should result in disqualification as a Chicago Police officer." However, "a single incident of damage or trespass to property ***, or of an attempt, conspiracy or solicitation to commit such an act, which occurred before the applicant's 21st birthday and at least three years prior to investigation, will not automatically result in disqualification. However, such incidents may be considered, with other matters, in determining whether to disqualify." During the hearing before Fleming, Sroga's counsel stipulated to both the accuracy and applicability of this standard.

also found that the expungement order did not bar the Personnel Board from considering those facts because that information was "in possession of the Chicago Police department and the City Department of Personnel prior to the date the expungement order was entered."

However, the court found that removal of Sroga's name from the eligibility list was improper because Sroga had received and successfully completed court supervision. The circuit court explained that "a *per se* prohibition against an individual becoming a Chicago Police officer after being prosecuted and successfully completing a period of supervision for an offense arising out of that incident would be in contravention of State law" as espoused by section 5—6—3.1 of the Unified Code of Corrections (730 ILCS 5/5—6—3.1 (West 2002) (incidents and conditions of supervision)). The court concluded, "As the Hearing Officer found the sole basis for removing Mr. Sroga from the eligibility list was his conduct in committing the 1994 theft, he must be restored to the eligibility list." The City filed a timely notice of appeal.

## ANALYSIS

■ This case arises on appeal from a common law writ of *certiorari*, which is a general method for obtaining circuit court review of administrative actions when the act conferring power on an agency does not expressly adopt the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 2002)) and provides for no other form of review. *Finnerty v. Personnel Board of the City of Chicago*, 303 Ill. App. 3d 1, 8 (1999). Decisions of the City of Chicago's Personnel Board are reviewable through a common law writ of *certiorari. Dubin v. Personnel Board of the City of Chicago*, 128 Ill. 2d 490, 495 (1989).

The standard of review for this writ and actions under the Administrative Review Law is essentially the same: based solely upon the record, whether there is any evidence fairly tending to support the order reviewed and whether that order is palpably or manifestly against the weight of that evidence. See *Finnerty*, 303 Ill. App. 3d at 8, quoting *Nowicki v. Evanston Fair Housing Review Board*, 62 Ill. 2d 11, 15 (1975); see also *Hanrahan v. Williams*, 174 Ill. 2d 268, 272 (1996). An administrative agency's factual findings are against the manifest weight of the evidence only when the opposite finding is clearly evident; it is insufficient that the opposite finding is reasonable or that the ruling court might have found so. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992). Moreover, this court reviews the decision of the administrative agency, here the Personnel Board, and not the decision of the circuit court. See *Waliczek v. Retirement Board of the Fireman's Annuity & Benefit*

*Fund*, 318 Ill. App. 3d 32, 35 (2000). The first question here on appeal is whether the Personnel Board's decision to remove Sroga's name from the eligibility list due to his criminal background was against the manifest weight of the evidence.

According to the police department's criminal conduct background standard, an applicant who has committed any offense directed against property, including any theft or related offense, computer crime, deception, robbery, burglary, arson, and damage or trespass to property "should" be disqualified. The standards go on to state that "a single incident of damage or trespass to property \*\*\*, or of an attempt, conspiracy or solicitation to commit such an act, which occurred before the applicant's 21st birthday and at least three years prior to investigation, will not automatically result in disqualification. However, such incidents may be considered, with other matters, in determining whether to disqualify."

■ In this case, it is undisputed that Sroga pleaded guilty to criminal damage to property; conduct which, while not automatically disqualifying him as a potential candidate, may be considered by the Personnel Board in determining whether or not to do so. Moreover, in reviewing Rebich's report detailing Sroga's account of his role in the theft of the snowmobile, the Personnel Board concluded that his conduct amounted to theft and that his plea was to a "reduced charge of theft." Both the hearing officer and the Personnel Board found that Sroga's conduct was sufficient for disqualification, and we will not substitute our own judgment for that of the Personnel Board. See *Krocka v. Police Board of the City of Chicago*, 327 Ill. App. 3d 36, 48 (2001); *Davis v. City of Evanston*, 257 Ill. App. 3d 549, 559 (1993). Because there was a basis in the record for the Personnel Board's decision to disqualify Sroga, we cannot say that the Personnel Board's decision was against the manifest weight of the evidence.

Sroga contends that three statutes effectively barred the Personnel Board from considering his December 1994 conduct as a basis to disqualify him: (1) section 5—6—3.1(f) of the Unified Code of Corrections (730 ILCS 5/5—6—3.1(f) (West 2002)), explaining the effect of the successful completion of a sentence of court supervision; (2) section 5 of the Criminal Identification Act (20 ILCS 2630/5 (West 2002)), dealing with the expungement of arrest reports; and (3) section 2—103 of the Illinois Human Rights Act (775 ILCS 5/2—103(A) (West 2002)), which makes it a civil rights violation for any employer "to inquire into or to use the fact of an arrest or criminal history record information ordered expunged, sealed, or impounded \*\*\* as a basis to refuse to hire" an individual. We disagree with Sroga's reading as to the effect of these statutes for two reasons: (1) the police department's

standards of criminal conduct are concerned with an applicant's real conduct and (2) the Personnel Board was informed of Sroga's real conduct through Sroga himself.

In reviewing the police department's standards of criminal conduct, upon which both the hearing officer and the Personnel Board relied in removing Sroga from the eligibility list, it is evident that those standards are concerned with the applicant's real conduct, and not whether he was actually convicted of any of the listed disqualifying offenses. The standards speak of "incidents" and "other matters," and nowhere does the word "conviction" appear. In essence, these standards cast a wider net, disqualifying an individual because he actually committed a disqualifying crime, and not simply because he was convicted of that crime in a court of law.[3]

While question 53 of the application asks the applicant whether he has ever "been convicted of a crime," it also requires the applicant to state whether he ever "entered a plea of guilty to a crime in any court of law." In upholding Fleming's recommendation to remove Sroga's name from the eligibility list, the Personnel Board relied upon Sroga's "December 10, 1994, arrest and *plea of guilty with a stipulation to the facts on a reduced charge of theft*" (emphasis added), conduct which Sroga admitted to, both in his application filed prior to the expungement order and to Officer Rebich during the application interview. Not only was the Personnel Board aware of Sroga's real conduct, it examined the underlying facts of that conduct to conclude that he committed what amounted to an act of theft and emphasized the fact that Sroga stipulated to the accuracy of those facts in court. The Personnel Board did not rely solely upon the fact of arrest, conviction, or the resulting sentence as the basis for disqualifying him.

Yet, in the statutes relied upon by Sroga, it is the very fact of the arrest or conviction itself that is barred from consideration. For instance, section 5—6—3.1(f) states that the "[d]ischarge and dismissal upon a successful conclusion of a disposition of supervision shall be deemed without adjudication of guilt and *shall not be termed a conviction* for purposes of disqualification or disabilities imposed by law upon conviction of a crime." (Emphasis added.) 730 ILCS 5/5—6—3.1(f) (West 2002).

---

[3]During his closing statement at the hearing, Sroga's counsel stated, "The questions were asked of him in question 53, Mr. Sroga legally could have said I have no conviction whatsoever, and in the eyes of law and judge he would be correct. *I understand the personnel has their own rules with regard to this.* But, your honor, a conviction is a conviction is a conviction, so to speak." (Emphasis added.)

As stated above, however, the standards do not require a conviction as a prerequisite for disqualification. Rather, the standards are concerned with the real conduct of the applicant and the imposition of supervision does not alter or erase the actual conduct of the accused. See *People v. Sheehan*, 168 Ill. 2d 298, 308 (1995) ("That one who successfully completes a term of supervision is not adjudicated guilty does not mean that he or she did not commit the offense for which supervision was imposed"); *People v. Coleman*, 111 Ill. 2d 87, 97 (1986) (stating that the phrase "disqualification or disability imposed by law" in section 5—6—3.1(f) "contemplates certain rights which are lost as a matter of law by criminal convictions," such as the right to hold public office, to vote, and to possess a firearm); *Baker v. Civil Service Comm'n*, 142 Ill. App. 3d 157, 159 (1986) ("That the sentencing judge imposed an order of supervision instead of a conviction order does not change the fact of Baker's conduct. He did what he was accused of doing"). Though according to section 5—6—3.1(f) the "successful conclusion of a disposition of supervision shall be deemed without adjudication of guilt," here, according to Rebich's report, Sroga admitted to actually committing the conduct which the Personnel Board relied upon to disqualify him; conduct which, in the Personnel Board's view, amounted to theft.

Similarly, as we have explained in construing the predecessor expungement statute to section 5:

"The statutory expungement provision (Ill. Rev. Stat. 1975, ch. 38, par. 206—5) allows an otherwise qualified individual to have the record of a prior arrest that did not result in a conviction expunged from the official records of the arresting authority. The relief granted by this statute is limited only to official records. It does not act to eliminate the facts and circumstances leading to the arrest, nor does it erase the incident from the mind of an independent occurrence witness.

Since petitioner's disqualification was ultimately based on proof of the circumstances surrounding the prior arrest, the intervening expunction did not prohibit the Personnel Board's consideration of criminal acts as a basis for that disqualification." *Del Rivero v. Cahill*, 71 Ill. App. 3d 618, 622 (1979) (construing the predecessor to section 5).

Not only was the City aware of Sroga's criminal background prior to the issuance of the expungement order, the expungement statute does not bar consideration of "the facts and circumstances leading to the arrest, nor does it erase the incident from the mind of an independent occurrence witness." See *Del Rivero*, 71 Ill. App. 3d at 622. Here, according to Rebich's report, Sroga himself admitted to those facts. Thus, the Personnel Board could properly consider them.

Finally, section 2—103(B) does not bar the Personnel Board from considering an applicant's real conduct. According to that statute, the "prohibition against the use of the fact of an arrest contained in this Section shall not be construed to prohibit an employer *** from obtaining or using other information which indicates that a person actually engaged in the conduct for which he or she was arrested." 775 ILCS 5/2—103(B) (West 2002).[4] In disqualifying Sroga, the Personnel Board relied upon Sroga's actual conduct as told to Officer Rebich by Sroga himself.

By applying for a position as a probationary police officer before the expungement order was issued, and by admitting to the disqualifying conduct both before and after the issuance of the expungement order, Sroga himself rang the bell. Once the bell was rung and the Personnel Board was in possession of that information, it could properly consider it. Therefore, we reverse the decision of the circuit court and remand this matter with instructions that the circuit court affirm the decision of the Personnel Board removing Sroga's name from the eligibility list.

Reversed and remanded with instructions.

REID, P.J., and GREIMAN, J., concur.

----

[4]Because we find that the Personnel Board did not violate section 2—103(B), we express no opinion as to whether a violation of section 2—103(A) would provide a basis to overturn the Personnel Board's decision.