**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 28, 2016[*]
Decided April 7, 2016

**Before**

DIANE P. WOOD, *Chief Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 15-1575

| | |
|---|---|
| CHRISTOPHER HICKSON, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Central District of Illinois. |
| | |
| *v.* | No. 13-3206 |
| | |
| AT&T SERVICES, INC., | Colin S. Bruce, |
| *Defendant-Appellee*. | *Judge*. |

**O R D E R**

Christopher Hickson appeals the grant of summary judgment for his former employer, AT&T Services, in this diversity suit asserting that he was fired based on a prior arrest. See 775 ILCS 5/2-103(A). We affirm.

We recount the evidence in the light most favorable to Hickson, the party opposing summary judgment. See *Carter v. Chi. State Univ.*, 778 F.3d 651, 657 (7th Cir. 2015). Hickson worked for AT&T for about ten years as a senior risk specialist when, in

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. See FED. R. APP. P. 34(a)(2)(C).

December 2010, he had a car accident. Hickson had been texting on his cell phone while driving home from a non-work-related Christmas party and concert, and, distracted, he flattened a no-parking sign and knocked a post-office box thirty feet with his truck.

A police officer followed Hickson home and arrested him after throwing him to the ground and smashing his nose. After Hickson was treated at an emergency room, the police released him with citations. The police did not ask to administer a field sobriety test at Hickson's house, and Hickson refused blood and urinalysis tests at the hospital.

The next day, December 12, Hickson emailed his AT&T supervisor David Engel to inform him that he had been arrested for a traffic incident after a Christmas party. On his way home he had been texting while driving, Hickson wrote, and he hit a no parking sign. Despite the damage being minimal, police were called. Hickson told Engel that he had refused to submit to a DUI test and had been arrested, but his lawyer was confident that the charges would be dismissed. Hickson closed his email by stating that he was reporting his arrest to Engel in compliance with AT&T's Code of Business Conduct (which requires employees to report arrests, charges, and dispositions), and he asked Engel to let him know if further action was required. Hickson's email did not mention that he had also been charged with leaving the scene of an accident, driving without insurance, and improper lane usage, and arrested for resisting a peace officer. Later in December Engel informed his supervisor, Wayne Johnson, about Hickson's accident and said that he would apprise him of any developments.

But nothing happened for another nine months, until September 2011, when AT&T received an anonymous note from "Concerned Stockholders" about criminal charges that had been brought against Hickson as a result of the December 2010 incident. The note questioned Hickson's honesty and integrity and attached a copy of a case information from state court records that set forth Hickson's entire arrest history and disposition of his 2010 charges that he had not disclosed to AT&T.

Upon receiving the report, Johnson uttered the first of two comments that Hickson considered discriminatory. According to Hickson, Jackson expressed "umbrage" that he had left the scene of the accident because his job at AT&T required him to train technicians how to handle accidents. Johnson referred the matter to AT&T's Asset Protection Department, which investigates violations of the company's code of business conduct. Johnson later told Hickson that he had received an anonymous note and court records, and then made a second discriminatory comment when he stated that he knew about Hickson's prior DUI arrest. But Johnson refused to discuss the

investigation and said he would "hold off" discussing the matter until Asset Protection issued its report.

Hickson met in October with both an employee from Asset Protection and his new supervisor, Lori Ridder, to discuss the details of his arrest. He provided a signed statement admitting that he had been issued citations for driving-under-the-influence, leaving the scene, and improper lane usage. Hickson also acknowledged that he had not informed AT&T that he had pleaded guilty in August 2011 to reckless driving. But he insisted that he substantially complied with AT&T's Code of Business Conduct by emailing Engel about his DUI citation, and he was not required to report the reckless-driving disposition until he had paid the fine.

Johnson received a copy of the Asset Protection investigation report that documented inconsistencies between Hickson's account of his December 2010 arrest and the police statements. Hickson had denied being intoxicated or resisting arrest, but the police statements said that Hickson had attempted to flee from the police and resisted arrest, that he had bloodshot eyes, slurred his words, and smelled of alcohol, and that he had refused to submit to a urinalysis test for alcohol. Moreover, Hickson had submitted to Asset Protection incomplete police reports that left out incriminating information. Johnson forwarded the report to Ridder and asked whether she recommended termination.

Ridder recommended that AT&T fire Hickson based on his "pattern of dishonesty" and "ingrained reluctance to be held accountable" for his violations of the code of business conduct. Ridder noted that Hickson provided to his prior supervisor only the "barest minimum of detail on his arrests" and failed to report the other charges and disposition. She also found that Hickson's story of events stood in "stark contrast" with the police statements. And Ridder found it "especially troubling" that Hickson maintained that he had complied with the code, despite his continued attempts to "cover up and/or gloss over" his charges for resisting arrest.

Johnson likewise recommended to his boss that AT&T fire Hickson. Johnson thought that Hickson's decisions to hold back information and evidence brought his ethics into question and "contradict[ed]" his responsibilities as a risk specialist to gather and maintain evidence. A few days later, on November 3, 2011, Johnson informed Hickson without explanation that he was fired.

Hickson then sued AT&T in Illinois state court, asserting that the company had used his arrest as a basis for firing him, in violation of the Illinois Human Rights Act, 775

ILCS 5/2-103. The statute prohibits an employer to "use the fact of an arrest . . . as a basis to . . . discharge." *Id*. at 5/2-103(A). The statute, however, does not prohibit the employer "from obtaining or using other information which indicates that a person actually engaged in the conduct for which he or she was arrested." *Id*. at 5/2-103(B). AT&T removed the action to federal court and after the close of discovery moved for summary judgment.

In granting summary judgment for AT&T, the district court concluded that Hickson could not prevail on his discrimination claim under the direct or indirect method of proof. Regarding the direct method, the court explained, Hickson provided neither direct evidence that he was fired based on the fact of his arrest nor circumstantial evidence to allow a reasonable factfinder to infer causation between the fact of Hickson's arrest and discharge. The 11 months between his arrest and discharge, the court pointed out, was too lengthy to be suspicious. And Johnson's two comments about the arrest (expressing "umbrage" and taking note of Hickson's prior arrest) did not violate the statute or even suggest discriminatory intent because they were directed at Hickson's behavior rather than the fact of his arrest. Regarding the indirect method, the court found that, even if Hickson were able to establish a prima facie case of discrimination, he failed to produce evidence from which a rational jury could infer that AT&T's reason for firing him was pretextual.

On appeal Hickson only challenges the district court's analysis under the direct method and specifically its determination that he failed to produce circumstantial evidence that supports a connection between his arrest record and termination. Circumstantial evidence can include suspicious timing, ambiguous oral or written statements, or "evidence that the employer offered a pretextual reason for an adverse employment action." *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 587 (7th Cir. 2011); see *Hutt v. AbbVie Prods. LLC*, 757 F.3d 687, 691 (7th Cir. 2014).

Hickson disagrees with the district court's conclusion that the relevant timing was the eleven months between his arrest and discharge. Hickson proposes that the relevant period is merely 30 days—from September 2011, when Johnson learned from the anonymous note about his full arrest history, to October 2011, when Johnson decided to fire him. From this close timing, Hickson argues, a reasonable jury could conclude that his arrest records influenced Johnson's decision to fire him.

But 775 ILCS 5/2-103(A) prohibits using "the fact of an arrest" as the basis for discharge, and Hickson gives us no reason to question the district court's designation of December 2010 as the relevant date when Johnson first learned of the *fact* of his arrest.

Cf. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (per curiam) (measuring relevant time period from when employer first knew of protected activity). And even if we were to accept Hickson's argument that the relevant time period was only 30 days, "[s]uspicious timing may be just that—suspicious," but it may not warrant an inference of causality where a significant intervening event destroys the inference. *Davis v. Time Warner Cable of SE Wis., L.P.*, 651 F.3d 664, 675 (7th Cir. 2011) (quoting *Loudermilk v. Best Pallet Co.*, 636 F.3d 312, 315 (7th Cir. 2011)). Here the significant intervening event was the Asset Management report on Hickson's failure to report truthfully. The findings in this report provided the basis for Johnson's decision to fire Hickson.

Hickson next contends that the district court misdated Johnson's two comments (one expressing "umbrage" that Hickson had left the scene of an accident and one informing Hickson that he knew about Hickson's prior DUI arrest) as occurring in December 2010, rather than in late September 2011. The factual error, Hickson argues, led the court to reason incorrectly that the passage of many months had weakened any causal connection between Johnson's comments and his decision to fire him.

Although the district court confused the chronology, its analysis was nevertheless correct. As the district court explained, Johnson's first comment expressed concern about Hickson's *behavior* in leaving the scene of an accident that resulted in arrest, not the *fact* of the arrest, and such concern did not violate 775 ILCS 5/2-103(B) or suggest discriminatory intent, see *Sroga v. Pers. Bd. of City of Chi.*, 833 N.E.2d 1001, 1007–08 (Ill. App. Ct. 2005) (775 ILCS 5/2-103(B) did not bar consideration of actual conduct as told by plaintiff himself, even though conduct led to arrest). And Johnson's second comment about Hickson's prior DUI arrest is not probative of discriminatory intent because it was not "related to the employment decision in question." *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1089 (7th Cir. 2000) (internal quotations marks omitted). After Johnson mentioned the prior arrest, he expressly told Hickson that he would "hold off" making any decision until Asset Protection issued its report. Hickson has not produced evidence to suggest that Johnson decided to fire him based on the *fact* of his arrest rather than Asset Protection's report of his lack of truthfulness. See *Labor Comm. v. City of Decatur*, 968 N.E.2d 749, 757 (Ill. App. Ct. 2012) (no violation of 775 ILCS 5/2-103(A) for entity to investigate and find that person committed the conduct that led to arrest).

Hickson finally disagrees with the district court's conclusion that he cannot show that AT&T's reason for firing him was pretext. He contends that the district court weighed his evidence, rather than accepting the facts in a light favorable to him, as appropriate when ruling on a motion for summary judgment. Hickson points to

numerous errors in the Asset Protection report that, he believes, led to AT&T's flawed conclusion that he had been dishonest. But the factual accuracy of the Asset Protection report is not material. "The question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the discharge." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011); cf. *Franklin v. City of Evanston*, 384 F.3d 838, 841–42, 846 (7th Cir. 2004) (no violation of 775 ILCS 5/2-103 where employer fired plaintiff upon discovering from newspaper that he had been arrested for marijuana possession, in violation of employer's policy, where plaintiff offered no basis to refute that he violated policy). What is material is whether Hickson's supervisors sincerely believed that Hickson had been dishonest. See *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 580–81 (7th Cir. 2015) (even baseless or overly harsh explanations suffice if honestly believed); *Simpson v. Beaver Dam. Cmty. Hosps., Inc.*, 780 F.3d 784, 797 (7th Cir. 2015) (plaintiff did not raise genuine issue about the honesty of employer's belief in negative reference about plaintiff from anonymous source). Hickson has not introduced any evidence that creates a genuine dispute about the sincerity of their beliefs.

AFFIRMED.