2023 IL App (1st) 221253-U
Order filed: June 22, 2023

FIRST DISTRICT
FOURTH DIVISION

No. 1-22-1253

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| MAURICE PENDLETON, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 L 10087 |
| | ) | |
| THE BOARD OF EDUCATION OF THE CITY OF | ) | Honorable |
| CHICAGO, | ) | Jerry A. Esrig, |
| | ) | Judge, presiding. |
| Defendant-Appellee. | ) | |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Lampkin and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Order granting summary judgment in favor of defendant and denying plaintiff's motion for partial summary judgment is affirmed, where defendant relied on more than the mere fact of plaintiff's arrest in making decision to terminate plaintiff and preclude him from future employment.

¶ 2    Plaintiff-appellant, Maurice Pendleton, filed a complaint alleging that defendant-appellee, the Board of Education of the City of Chicago (the Board), improperly discharged him and placed him on a "do not hire" list based on the mere fact of his arrest, in violation of section 2-103(A) of the Illinois Human Rights Act (Act). 775 ILCS 5/2-103(A) (West 2018). Plaintiff appeals from the circuit court's order granting summary judgment in favor of the Board and denying his own motion for partial summary judgment. For the following reasons, we affirm.

¶ 3     Plaintiff was hired by the Board in the spring of 2017 as a Chicago Public Schools (CPS) substitute teacher, having completed a criminal background check revealing he had no prior criminal convictions. Plaintiff served as a full-time substitute physical education teacher during the 2017-2018 school year, and the principal of the school where he worked requested that plaintiff be reassigned to that role for the following year.

¶ 4     On June 28, 2018, plaintiff was involved in an incident and arrested at a Popeye's Chicken restaurant. Two police reports regarding the incident were generated the following day: (1) an "Arrest Report," completed by one of the responding police officers, and (2) an "Original Case Incident Report" (OCI report), completed by one of the other responding police officers.

¶ 5     The arrest report contained a narrative section summarizing the police investigation into the incident. Therein, it was reported that the police officers reviewed security camera footage of the incident after they arrived at the restaurant. The footage showed that after a verbal confrontation inside the restaurant between plaintiff and one of the restaurant employees, Tracy Wright, plaintiff left the premises only to return and confront Wright outside the restaurant and state "I'm going to pop you." The two then "engage[d] in a physical confrontation where both parties throw punches but neither make contact."

¶ 6     Plaintiff then left and returned driving his car before crashing it into the side of the restaurant, causing damage. Plaintiff once again left the premises, only to return a third time in his car and proceed "north through the parking lot at a high rate of speed almost striking victim Wright placing him in fear of receiving a battery." The arrest report also indicated that plaintiff was recorded on Rodriguez's body-worn camera stating: "not verbatim, that he went to Popeye's looking to confront Wright because his daughter called him upset after leaving Popeye's restaurant. Offender further stated that employee Wright should have never [come] outside." The arrest report

further indicated that plaintiff was arrested on the scene, his car was impounded, and criminal complaints against plaintiff were signed the following day by both Wright and Candace Fisher, the restaurant's general manager.

¶ 7    The OCI report also contained a narrative section summarizing the police investigation into the incident, which largely matched the narrative included in the arrest report. However, some additional information was included. For example, the OCI report indicated that Wright told the police that plaintiff's daughter worked at the restaurant, but he had asked her to leave when she became irate after a disagreement over work procedures. The OCI report's summary of the security footage generally matched the summary in the arrest report, initially describing plaintiff and Wright having an argument inside the restaurant before plaintiff leaves and returns to confront Wright outside the restaurant. The two are then observed "taking bladed stances with closed fist[s], but neither party makes physical contact." However, the OCI report notes that when plaintiff returned the second time, two unknown bystanders were observed attempting to pull plaintiff from his vehicle before it struck the restaurant. It also indicated that plaintiff's car had been rendered inoperable and it was towed from the scene.

¶ 8    Three misdemeanor criminal complaints, each sworn by either Wright or Fisher under oath, were filed the day after the incident. In the first complaint, Wright accused plaintiff of committing assault by throwing several punches at him, placing Wright in apprehension of receiving a battery. In the second complaint, Wright accused plaintiff of committing aggravated assault with a deadly weapon by driving his car at a high rate of speed toward Wright, placing him in apprehension of receiving a battery. In the third complaint, Fisher accused plaintiff of criminal damage to property by causing less than $300 in damage to the restaurant. A certified statement of disposition as to the criminal charges filed against plaintiff indicates that they were dismissed with leave to reinstate

on July 23, 2018, and the record reflects that these charges were never reinstated.

¶ 9    In August 2018, plaintiff was notified that the Board had become aware of his arrest as part of its "Criminal Background Refresh Investigation" process, and plaintiff was suspended without pay. On October 4, 2018, plaintiff was sent a letter from Mary Ernesti, the Board's Executive Director of Employee Engagement. That letter informed plaintiff that an investigatory conference was scheduled for October 11, 2018, based upon an allegation that plaintiff "engaged in conduct unbecoming a CPS employee," and that the conference "could result in the termination of your employment with the Chicago Public Schools, as well as placement of a Do Not Hire designation in your record."

¶ 10    In response to this letter, plaintiff submitted to the Board a four sentence, handwritten statement explaining that his arrest was the result of an incident at the restaurant where his daughter worked. Plaintiff said he drove to the restaurant because his daughter's manager was harassing her in a threatening manner. The manager and plaintiff then "had an altercation and it was resolved in court. The case was dismissed."

¶ 11    On October 11, 2018, plaintiff and his attorney participated in the investigatory conference, which was conducted by a hearing officer employed by the Board, Kevin Kaufman. The transcript of the conference reflects that plaintiff presented a second, one-page handwritten statement to the Board that added the following detail. Plaintiff asserted that he drove to the restaurant after learning that Wright was "being rude to my child[,] calling her offensive names and making her cry." Intending to "talk it out" with Wright, plaintiff and Wright exchanged words that resulted in a confrontation outside in which "no punches were exchange[d]." Plaintiff then returned to his car, at which time one of Wright's family members attempted to force plaintiff out of the car. A brick was then thrown at one of the windows of plaintiff's car, which caused plaintiff to strike the side

of the restaurant causing no damage. Plaintiff concluded by asserting that all charges against him had been "dropped."

¶ 12    At the conference, plaintiff stated for the first time that his minor daughter called him on the day of the incident "saying her manager and his cousin [were] trying to sexually assault her." After a verbal altercation with the "manager," apparently referring to Wright, inside the restaurant, plaintiff and the manager continued arguing outside as the manager was "looking for a confrontation." At that point, as plaintiff admits for the first time, "punches get thrown, but nobody hits each other."

¶ 13    Plaintiff and his daughter then return to their respective cars before the manager's cousin throws a brick into plaintiff's windshield causing him to strike the side of the restaurant with his car. Plaintiff then called the police and was arrested, although the criminal charges against him had been dismissed. The transcript indicates that plaintiff showed Kaufman a photo of damage to his car on his phone. Kaufman left the record open for one additional day so that plaintiff could provide a copy of the photo for the record.

¶ 14    On November 1, 2018, Kaufman sent a memorandum to Ernesti regarding the investigatory conference. Therein, Kaufman stated that the record included an arrest report, the three misdemeanor complaints, the certified statement of disposition as to the charges filed against plaintiff, the written statements plaintiff submitted to the Board, and plaintiff's testimony at the conference. Kaufman also noted that while the record had been kept open following the conference, no additional information was provided. The memorandum does not appear to include reference to or discussion of the OCI report.

¶ 15    Kaufman then summarized this evidence, noting that at the conference plaintiff asserted for the first time that "his daughter called him from her job at a Popeye's restaurant alleging that

her manager was attempting to sexually assault her." He also noted that while plaintiff's second written statement asserted that his argument with Wright "led to a confrontation where no punches were thrown," at the conference plaintiff admitted that "he and the manager got into an argument outside the restaurant where both parties threw punches, but none of the punches land." As to issues of credibility, Kaufman found that plaintiff's description of events was not consistent between his letters of explanation and his testimony at the conference, and was not consistent with the summary of the security camera footage. Kaufman found no reason to question the credibility of the police officers that responded to the incident, and therefore deemed plaintiff "not credible."

¶ 16    Kaufman then made the following conclusions:

"Mr. Pendleton engaged in a physical altercation, that included an exchange of punches, with his daughter's manager. Mr. Pendleton, after first leaving the scene, returned twice. The first time was to drive his vehicle into the side of the building and the second time was to drive at the employee at a high rate of speed in an attempt to strike him with his vehicle. As such, the record supports a finding that Mr. Pendleton engaged in conduct unbecoming a CPS employee.

Additionally, Mr. Pendleton provided a statement to the Board that included deliberately false and misleading statements. Mr. Pendleton wrote that he did not throw any punches and failed to mention that he drove at the employee at a high rate of speed, narrowly missing him. As such, the record supports a finding that Mr. Pendleton attempted to [defraud] an investigation.

\*\*\*

Based on the record developed at the hearing, the allegation that Mr. Pendleton engaged in conduct unbecoming a CPS employee is substantiated in full. In addition, Mr.

Pendleton attempted to [defraud] the investigation by providing false and misleading statements in his letter of explanation. Based on the seriousness of the misconduct at issue, Mr. Pendleton will be terminated and a 'Do Not Hire' designation will be placed on his record."

¶ 17    On November 1, 2018, Ernesti sent a letter to plaintiff informing him that his employment was terminated, effective immediately, and was ineligible for future employment. Therein, Ernesti explained that this action was being taken "based on the allegation that you engaged in conduct unbecoming a CPS employee" and because she had "substantiated the allegations as you were involved in a physical altercation with a restaurant employee that included you driving your vehicle at a high rate of speed in an attempt to hit the employee as well as you driving your vehicle [into] the building. I also found that you gave intentionally false and misleading statements to the Board during its Criminal Background Refresh investigation."

¶ 18    On December 6, 2018, plaintiff filed a written "Charge of Discrimination" with the Illinois Department of Human Rights (Department), alleging discrimination based on an arrest record. Therein, plaintiff stated that he testified truthfully at the conference that he "did not engage in the conduct alleged in the criminal complaint" and told Kaufman that the charges had been stricken. Plaintiff then asserted that Ernesti's termination letter "contains false and pretextual reasons for my dismissal. The letter restates the false statements made by the complaining witnesses, and falsely claims I gave intentionally false and misleading statements to the Board during the Criminal Refresh Investigation into my arrest." Plaintiff concluded by asserting that the "true reason I was discharged and placed on the Do Not Hire list is my arrest record." After subsequently notifying the Department that he wished to opt out of the Department's investigation, plaintiff received a written notice of his right to commence a civil action in circuit court from the Department, dated

June 19, 2019. Plaintiff thereafter filed this lawsuit on September 13, 2019.

¶ 19    In his seven-page, one-count complaint, plaintiff alleged that he did not engage in the conduct alleged in the criminal complaints filed against him, the arresting officers did not witness the events that occurred on the day of the incident, and that all the criminal charges against him had been "stricken." Additionally, the termination letter he received "erroneously stated that [plaintiff] made false statements to the Chicago Board's Investigator during the investigatory conference, and falsely stated that he engaged in the actions described in a police report, even though the arresting officers did not witness the incident at the restaurant."

¶ 20    Based on these factual allegations, plaintiff asserted that the Board had improperly used "the fact" of his arrest as basis to "refuse to hire him and/or renew his employment for the 2018-2019 school year" and "place him on its 'do not hire' list, foreclosing *** employment opportunities both with the Chicago Board and entities that do business with the Chicago Board." The complaint specifically asserted that these actions violated section 2-103(A) of the Act, which at the time stated in relevant part:

> "Unless otherwise authorized by law, it is a civil rights violation for any employer, employment agency or labor organization to inquire into or to use the fact of an arrest *** as a basis to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment." 775 ILCS 5/2-103(A) (West 2018).

Notably, unlike the charge of discrimination he filed with the Department and then abandoned, the complaint did not include any allegation that the reasons given for his dismissal were "pretextual."

¶ 21    On February 13, 2020, the Board filed an answer denying the material allegations of the

complaint, which included an affirmative defense noting that despite the limitation contained in section 2-103(A) of the Act, section 2-103(B) provides: "The prohibition against the use of the fact of an arrest contained in this Section shall not be construed to prohibit an employer, employment agency, or labor organization from obtaining or using other information which indicates that a person actually engaged in the conduct for which he or she was arrested." 775 ILCS 5/2-103(B) (West 2018). The Board contended that it had properly relied upon such "other information" with respect to its decision to terminate plaintiff, and therefore did not violate the Act. On February 25, 2020, plaintiff filed a response to this affirmative defense. Therein, plaintiff denied that the Board "obtained, used, or relied on information other than the fact of Plaintiff's arrest when making the decisions to (a) terminate Plaintiff's employment and (b) place him on its do not hire list."

¶ 22     The parties thereafter engaged in discovery, including taking the depositions of plaintiff and Ernesti. In his deposition, plaintiff again admitted to throwing punches during his dispute with Wright. He also admitted that he therefore "misspoke" in his second written statement when he stated that no punches were "exchanged."

¶ 23     In her deposition, Ernesti testified that she made the decision to terminate plaintiff's employment and place him on the "do not hire" list after reviewing the entire record and concurring in Kaufman's findings. The documents that she reviewed included plaintiff's two handwritten letters, the criminal complaints, Kaufman's memorandum, the arrest report, and information presented by plaintiff and his attorney at the investigatory conference.

¶ 24     Notably, Ernesti also indicated that she reviewed the OCI report. Ernesti could not be certain that this document was reviewed by Kaufman, but she assumed he would have reviewed all the material in the record. Additionally, while Ernesti concluded that all the allegations against

plaintiff were substantiated by the record, she was also asked: "Just taking the fact that Mr. Pendleton admitted that punches were thrown in the Popeye's parking lot, that admission in and of itself, how important was that in your making a decision about whether or not he should maintain his employment?" Ernesti responded by stating that this was "an important factor," as the mere fact that plaintiff admitted to "attempting to engage in physical violence ***amounts to conduct unbecoming a CPS employee."

¶ 25    The Board filed a motion for summary judgment on December 7, 2021. In its motion, the Board asserted that it was entitled to summary judgment in its favor because it was undisputed that it "relied upon Plaintiff's underlying misconduct in making a termination decision and not merely upon the fact of Plaintiff's arrest." The Board asserted that while its investigation into this matter began when it initially became aware of plaintiff's June 2018 arrest, the record unequivocally established that its decision to terminate plaintiff was based upon a "holistic review" of "other information" in conformity with section 2-103(B) of the Act. 775 ILCS 5/2-103(B) (West 2018).

¶ 26    On May 9, 2022, plaintiff responded by filing a motion seeking partial summary judgment on the issue of liability. In the motion, Plaintiff specifically noted a discrepancy in the record. While Kaufman never mentioned the OCI report as being a part of the record or discussed its content, Ernesti asserted that she relied upon that document in making her decision. Plaintiff also noted that the OCI report contained additional information confirming his rendition of events. Plaintiff specifically noted that this report indicated that the surveillance footage showed: (1) plaintiff and Wright "taking bladed stances with closed fist[s], but neither party makes physical contact," and (2) that two unknown bystanders were observed attempting to pull plaintiff from his vehicle before it strikes the restaurant.

¶ 27    Plaintiff argued that the record established that the Board made no effort to confirm the

accuracy of the arrest records, mischaracterized his written statements and testimony, and ignored evidence that confirmed his rendition of events. Plaintiff asserted that the Board therefore did not rely on "other information" sufficiently persuasive to indicate he engaged in the conduct for which he was arrested; rather it relied on the fact of his arrest alone in violation of the Act.

¶ 28    After the summary judgment motions were fully briefed, the circuit court made an oral ruling on August 1, 2022, in which it awarded summary judgment in favor of defendant and denied plaintiff's motion for partial summary judgment. The circuit court began by explaining that "in this case the Court is not reviewing the fairness of the [Board's] decision or the quality of the investigation," as "that's not the role of this Court under the statute under which this case is brought." Rather, the circuit court noted that it was "considering only the narrow question [of] did the defendant rely on evidence beyond the fact of the arrest." The circuit court concluded that "here all of the evidence indicates that [the Board] did, and there is no evidence that it did not."

¶ 29    The circuit court based its decision upon its conclusion that neither the language of section 2-103 of the Act nor case law interpreting that statute precluded the Board from relying on "information in the police report if it supported the proposition that the plaintiff acted as alleged," as opposed to relying solely on the mere fact of the plaintiff's arrest. Furthermore, the circuit court also concluded that in this matter "it's undisputed that the [Board] relied on materials outside the arrest report, including the sworn complaints filed by the 'victims' and the statements and testimony given by plaintiff." The circuit court concluded that the Board was entitled to summary judgment in its favor as "there's no evidence that [it] didn't rely on that information." A written order reflecting the circuit court's ruling was entered the following day, and plaintiff timely appealed on August 26, 2022.

¶ 30    Summary judgment is properly granted where the pleadings, depositions, and admissions on file, together with any affidavits, indicate there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2–1005(c) (West 2022). The court must examine the evidence in the light most favorable to the nonmoving party (*Pavlik v. Wal–Mart Stores, Inc.*, 323 Ill. App. 3d 1060, 1063 (2001)), and must construe the material strictly against the movant and liberally in favor of the nonmovant (*Espinoza v. Elgin, Joliet and Eastern Railway Company*, 165 Ill. 2d 107, 113 (1995)). Although a drastic means of disposing of litigation, summary judgment is nonetheless an appropriate measure to expeditiously dispose of a suit when the moving party's right to the judgment is clear and free from doubt. *Gaston v. City of Danville*, 393 Ill.App.3d 591, 601 (2009).

¶ 31    Although the filing of cross-motions for summary judgment does not necessarily establish the lack of an issue of material fact or obligate a court to render summary judgment, it does indicate that the parties agree that the case involves a question of law and that they invite the court to decide the issues based on the record." *Shared Imaging, LLC v. Hamer*, 2017 IL App (1st) 152817, ¶ 13. An order granting a motion for summary judgment is subject to a *de novo* standard of review. *Millennium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 309 (2010). This court may, therefore, affirm the judgment of the circuit court on any basis that appears in the record, regardless of whether the circuit court relied upon that basis or whether the circuit court's reasoning was correct. *Retirement Plan for Chicago Transit Authority Employees v. Chicago Transit Authority*, 2020 IL App (1st) 182510, ¶ 34.

¶ 32    At the time plaintiff was terminated and placed on the Board's "do not hire" list, section 2-103(A) of the Act provided that it is a civil rights violation for any employer to "inquire into or to use the "*fact of an arrest*" in making employment decisions. (Emphasis added.) 775 ILCS 5/2-

103(A) (West 2018). Courts have recognized that with respect to this provision, "the intent of the legislature was to prevent inquiry into mere charges or allegations of criminal behavior" (*Beard v. Sprint Spectrum, LP*, 359 Ill. App. 3d 315, 320 (2005)), and to "protect[] a person whose arrest is not an accurate signifier of their character or potential, who was arrested without probable cause or was simply in the wrong place at the wrong time" (*Murillo v. City of Chicago*, 2016 IL App (1st) 143002, ¶ 29). As such, this provision specifically provides that it is "the very fact of the arrest *** itself which is barred from consideration." *Sroga v. Personnel Board of City of Chicago*, 359 Ill. App. 3d 107, 112 (2005); see also, *Decatur Police Benevolent & Protective Ass'n Labor Commission v. City of Decatur*, 2012 IL App (4th) 110764, ¶ 35 (recognizing that section 2-103(A) prohibits using only "the fact of an arrest" as the basis for discharging an employee).

¶ 33　　However, section 2-103(B) "backtracks" from this limitation (*Murillo,* 2016 IL App (1st) 143002, ¶ 22) by specifically providing that this limitation "shall not be construed to prohibit an employer, employment agency, or labor organization from obtaining or using other information which indicates that a person actually engaged in the conduct for which he or she was arrested." 775 ILCS 5/2-103(B) (West 2018). Thus, all the Act requires is that the employer go beyond the mere fact of an employee's arrest and obtain or use "other information which indicates that a person actually engaged in the conduct for which he or she was arrested." *Id*. The word "indicate" in this statute has been defined as " 'to serve as a sign, symptom, or token of; signify.' " *Murillo,* 2016 IL App (1st) 143002, ¶ 24, quoting American Heritage Dictionary 892 (4th ed. 2006). Therefore, " '[w]hile the word 'indicate' in subsection (B) does not mean 'proof beyond a reasonable doubt'; it equally does not mean 'unsupported assumption of guilt.' " *Id*.

¶ 34　　As such, the Act "does not prevent an employer from firing an employee for the conduct that gave rise to the arrest." *Podlasek v. Office of State's Attorney of Cook County*, 20 C 2357,

2022 WL 17718412, at *9 (N.D. Ill. Dec. 14, 2022); *Sroga*, 359 Ill. App. 3d at 114 (recognizing that section 2-103(B) does not preclude an employer from considering an employee's "real conduct"). Indeed, the Act does not preclude an employer from firing an employee even where that employee is "never formally charged or convicted" or where the employee is arrested but their actions did not ultimately result in a legal penalty, including situations in which a witness refuses to testify. *Murillo,* 2016 IL App (1st) 143002, ¶ 28.

¶ 35    Such information can include an employee's own admissions. *Sroga*, 359 Ill. App. 3d at 114. Employers may also rely upon arrest reports that are "sufficiently persuasive" to "indicate" that the employee actually engaged in the conduct for which the employee was arrested, as "an arrest report can include a wealth of detail on which an employer might rely." *Murillo*, 2016 IL App (1st) 143002, ¶¶ 24, 27. Finally, the Act does not preclude "mentioning the arrest when summarizing" the other information which indicates that a person engaged in the conduct for which he or she was arrested. *Decatur*, 2012 IL App (4th) 110764, ¶ 35.

¶ 36    Before proceeding further, we pause to note that plaintiff is correct that the record is somewhat unclear with respect to exactly when and how the Board considered the OCI report. Nevertheless, even if this presents an unresolved issue of fact, we do not find that it presents a genuine issue of material fact such that the Board was not entitled to judgment in its favor as a matter of law. Even discounting the OCI report, the record contains undisputed evidence that the Board also obtained and considered "other information" before making its decision to terminate plaintiff and place him on the Board's "do not hire" list.

¶ 37    These other sources of information included: (1) the narrative in the arrest report, which included the police officers' observation of security camera footage showing plaintiff engaging in the conduct for which he was arrested; (2) the criminal complaints describing plaintiff's criminal

behavior, sworn to under oath by Wright and Fisher, and (3) plaintiff's own written statements and testimony at the investigatory conference, in which he admitted engaging in a physical altercation with Wright—albeit one where no physical contact was made—and admitted driving his car into the restaurant. This other information went far beyond the mere fact of plaintiff's arrest.

¶ 38     While this other information may not have amounted to "proof beyond a reasonable doubt" of plaintiff's conduct, such proof was not required, and the Board's decision was clearly based upon far more than an "unsupported assumption of guilt." *Murillo,* 2016 IL App (1st) 143002, ¶ 24. Indeed, it is undisputed—and plaintiff himself has admitted—that he exchanged punches with Wright. Ernesti provided unrebutted testimony that this conduct alone "amounts to conduct unbecoming a CPS employee." The Board therefore did not violate the Act by considering this evidence as "other information" sufficiently persuasive to indicate that plaintiff engaged in the conduct for which he was arrested. 775 ILCS 5/2-103(B) (West 2018); *Podlasek*, 20 C 2357, 2022 WL 17718412, at *9 (N.D. Ill. Dec. 14, 2022); *Sroga*, 359 Ill. App. 3d at 114; *Murillo,* 2016 IL App (1st) 143002, ¶ 28.

¶ 39     Moreover, the record is also clear that plaintiff was not terminated solely for the conduct for which he was arrested, but also for providing "intentionally false and misleading statements to the Board" during its investigation. The Board concluded that the version of events contained in his two written statements and in his testimony at the investigatory conference was inconsistent and misleading. This conduct had nothing at all to do with the mere fact of plaintiff's arrest and constituted an independent basis for the Board's decision.

¶ 40     On this record, we conclude that the Board did not violate the Act, and therefore conclude that summary judgment was properly granted in favor of the Board and partial summary judgment in favor of plaintiff was properly denied. In reaching this conclusion, we reject several specific

arguments raised by plaintiff on appeal.

¶ 41    First, we reject plaintiff's assertion that the limitation contained in section 2-103(A) of the Act not only precludes an employer from relying on the mere "fact of an arrest" in making employments decisions, but also precludes reliance on "arrest records." In making this argument, plaintiff notes that the statutory heading for section 2-103 of the Act reads: "Arrest Records."

¶ 42    The fundamental rule of statutory interpretation is to ascertain and give effect to the intent of the legislature, the most reliable indicator of that intent is the language of the statute itself, and a court may not depart from the plain language of the statute and read into it exceptions, limitations, or conditions that are not consistent with the express legislative intent. *Hendricks v. Board of Trustees of the Police Pension Fund*, 2015 IL App (3d) 140858, ¶ 14 Furthermore, when "the legislature enacts an official title or heading to accompany a statutory provision, that title or heading is considered only as a 'short-hand reference to the general subject matter involved' in that statutory section, and 'cannot limit the plain meaning of the text.' " *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 505-06 (2000), quoting *Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R. Co.,* 331 U.S. 519, 528-29 (1947).

¶ 43    Section 2-103(A) clearly and specifically provides only that employers are not allowed to "inquire into or to use the fact of an arrest or criminal history record information ordered expunged, sealed or impounded" in making employment decisions. 775 ILCS 5/2-103(A) (West 2018). Nowhere in the text of the section itself is a reference to or limitation on the use of "arrest records." The fact that "Arrest Records" is the heading to this section is nothing more than a short-hand reference to the general subject matter involved, and clearly is intended to include reference to "criminal history record information ordered expunged, sealed or impounded" in section 2-103(A), as well as "other information which indicates that a person actually engaged in the conduct for

which he or she was arrested" as referenced in in section 2-103(B). 775 ILCS 5/2-103 (West 2018). Plaintiff's interpretation of section 2-103(A) therefore improperly departs from the plain language of the statute, and we decline to follow it. Plaintiff's interpretation is also counter to prior case law recognizing that employees may consider arrest records. *Murillo*, 2016 IL App (1st) 143002, ¶¶ 24, 27.

¶ 44   Plaintiff next contends that even if arrest records may be considered, the arrest records at issue here do not contain the type of information considered sufficiently reliable to permit such consideration. In support of this argument plaintiff cites *Murillo*, 2016 IL App (1st) 143002, ¶¶ 26, 27, a case involving an employee that was ultimately fired based on a prior arrest for possession of a controlled substance. While in that case the court concluded that the arrest records at issue provided "no information she actually engaged in criminal conduct" and therefore the record reflected that the employee was found to have "committed these offenses because she had been arrested for them," the court went on to conclude:

> "This is not to say that an arrest report could never qualify as 'other information,' because an arrest report can include a wealth of detail on which an employer might rely. For example, the arrest report here could have included Murillo's confession to possessing the drugs, statements from witnesses that they had purchased drugs from Murillo, or a police officer's description of seeing Murillo holding or selling the drugs. This information could be sufficiently persuasive to 'indicate' that the person actually engaged in the conduct for which he or she was arrested." *Murillo*, 2016 IL App (1st) 143002, ¶¶ 25-27.

From this language, plaintiff contends that *Murillo* stands for the proposition that arrest records may only be considered where they contain "unambiguous direct observations of witnesses or a

confession from the employee him/herself."

¶ 45    We disagree. Clearly the court in *Murrillo* was simply providing examples of the type of relevant information that the arrest report could have contained *in that case*, not identifying a specific list of the *only* types of information in an arrest report that may be relied upon in *all* circumstances. The examples contained in that case therefore do not limit the court's general recognition that an "arrest report can include a wealth of detail on which an employer might rely." *Id.* ¶ 27.

¶ 46    Plaintiff's next assertion is that even if arrest records are appropriate sources of "other information," the Board here violated the Act because it relied on arrest records "alone" in deciding to discharge him and place him on the "do not hire" list. This argument clearly misstates the record, where it is undisputed that in addition to the arrest report the Board also obtained and considered the criminal complaints, plaintiff's written statements, and his testimony at the investigatory conference.

¶ 47    Plaintiff next argues that while employers may rely upon "independent witnesses" to the conduct that resulted in arrest, the "testimony or statements of the complaining witnesses and arresting police officers, however, do not constitute evidence from 'independent witnesses.' " In support of this contention plaintiff cites *Del Rivero v. Cahill*, 71 Ill. App. 3d 618, 622 (1979), in which the court recognized that employers may rely upon an "independent occurrence witness" to the conduct leading to an arrest. However, the "independent occurrence witness" in that case was in fact a police officer who was also the alleged victim of the aggravated battery for which the plaintiff was arrested but found not guilty. *Id.* at 619-20. This case therefore does not support plaintiff's argument.

¶ 48    Finally, plaintiff has raised several challenges to the ultimate merits of the Board's

decision. In general, these arguments restate those made in his motion for partial summary judgment in which he asserted that the Board made no effort to confirm the accuracy of the arrest records, mischaracterized his written statements and testimony, and ignored evidence that confirmed his rendition of events. Plaintiff asserts that the record therefore reveals that the Board's investigation and reasoning was pretextual, and ultimately amounted to improper discrimination based on nothing more than the fact of his arrest in violation of the Act. We need not address these arguments to affirm the circuit court's judgment.

¶ 49    As an initial matter, the "issues in controversy and the theories upon which recovery is sought are fixed in the complaint. [Citation.] A party cannot seek summary judgment on a theory that was never pled in the complaint." *Steadfast Insurance Co. v. Caremark Rx, Inc.*, 373 Ill. App. 3d 895, 900 (2007). Similarly, "a response to a motion for summary judgment is not the proper vehicle to assert new factual allegations that should have been included in the underlying complaint. 'When ruling on a motion for summary judgment, the trial court looks to the pleadings to determine the issues in controversy. [Citation.] If a plaintiff desires to place issues in controversy that were not named in the complaint, the proper course of action is to move to amend the complaint.' " *Abramson v. Marderosian*, 2018 IL App (1st) 180081, ¶ 55 (quoting *Filliung v. Adams*, 387 Ill. App. 3d 40, 51 (2008)).

¶ 50    Here, the complaint itself contains no specific allegations to support these arguments. The complaint makes no specific allegations regarding the purportedly perfunctory nature of the Board's investigation and makes no assertion that it was "pretextual." The only allegation in the complaint that comes even close is the specific assertion that Ernesti's termination letter "erroneously stated that [plaintiff] made false statements to the Chicago Board's Investigator during the investigatory conference, and falsely stated that he engaged in the actions described in

a police report, even though the arresting officers did not witness the incident at the restaurant." However, we do not find that these allegations are sufficient to place at issue the above referenced arguments plaintiff first raised in the context of briefing the motions for summary judgment. Thus, it is improper for plaintiff to rely on these arguments here in challenging the circuit court's ruling on the parties' motions for summary judgment.

¶ 51 Moreover, even if we were to consider these contentions, we would not find them persuasive. We reiterate that the Board terminated plaintiff and placed him on the Board's "do not hire" list only after concluding he engaged in conduct unbecoming a CPS employee. Furthermore, it is undisputed that plaintiff exchanged punches with Wright, and Ernesti provided unrebutted testimony that this conduct alone "amounts to conduct unbecoming a CPS employee." The circuit court's judgment may therefore be affirmed on this basis alone.

¶ 52 For the foregoing reasons, summary judgment was properly granted in favor of the Board, partial summary judgment in favor of plaintiff was properly denied, and we therefore affirm the judgment of the circuit court.

¶ 53 Affirmed.